JOHN BELL and ROSE BELL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bell v. Commissioner
Docket No. 26837-85.
United States Tax Court
T.C. Memo 1987-501; 1987 Tax Ct. Memo LEXIS 497; 54 T.C.M. (CCH) 753; T.C.M. (RIA) 87501; September 28, 1987; As amended September 29, 1987 David S. Golub, for the petitioners. Robert E. Marum, for the respondent. COHEN
COHEN, Judge: In a statutory notice of deficiency dated April 11, 1985, respondent determined deficiencies in and additions to petitioners' income tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(b)(1)
Sec. 6653(b)(2)
Sec. 6661 [1]
1978
$ 68,240.34
$ 34,120.17
-
-
1979
81,769.99
40,885.00
-
-
1980
126,343.67
63,171.84
-
-
1981
51,581.08
25,790.54
-
-
1982
29,194.40
14,597.40
*
$ 2,919.48
*499 Petitioner John Bell's potential liability is limited to the deficiencies and the addition to tax under section 6661. After concessions, the issues for decision are (1) whether the statute of limitations bars the assessment and collection of 1978, 1979, and 1980 income tax deficiencies from petitioner John Bell, and (2) whether petitioner John Bell should be relieved from liability for respondent's determinations against him pursuant to the "innocent spouse" provisions of section 6013(e). FINDINGS OF FACT Many of the facts have been stipulated, and the facts set forth in the stipulation are incorporated in our findings by this reference. Petitioners John Bell and Rose Bell timely filed joint income tax returns for the years in issue. When their petition was filed, Rose Bell resided in Fort Worth, Texas, and John Bell (petitioner) resided in Stamford, Connecticut. The parties have stipulated that appellate venue will lie with the United States Court of Appeals for the *500 Second Circuit. Petitioner John Bell was 76 years old when the petition was filed. He worked as a plumber for approximately 50 years and retired in 1973. Petitioner had little responsibility for financial matters during his years as a plumber. He worked in a union and was sent from job to job by his union boss. Petitioner did not order supplies or accept bids on jobs. At trial, he could not remember his annual earnings as a plumber, but he did recall that he earned less than $ 10 per hour. Petitioner married Rose Bell on September 12, 1969. Rose Bell was hired by Hilti, Inc. (Hilti), of Stamford, Connecticut, in October 1969. She became the supervisor of Hilti's accounts receivable in September 1974. During the years in issue, Rose Bell embezzled funds from Hilti by depositing checks payable to her employer in petitioners' joint checking account. During the years in issue, petitioner received less than $ 2,000 annually from the Connecticut Plumbers and Pipefitters Pension Fund. Rose Bell's annual salary was as follows: 10-6-78
$ 15,000
10-6-79
17,000
1-7-80
18,700 (10 percent Relocation Expense)
3-7-80
19,820
10-6-80
22,200
10-6-81
24,900
10-6-82
27,400
*501 Rose Bell was primarily responsible for the couple's finances. Each day, John Bell would remove mail from petitioners' mailbox, including bank statements for petitioners' joint checking account. John Bell never looked at the bank statements, nor did he open Rose Bell's mail. Rose Bell maintained the couple's checkbook, wrote all checks, and received and balanced all bank statements. A monthly checking account statement for the period ended January 20, 1981, reflects a $ 20,000 check made out to "Cash" drawn December 29, 1980, and another $ 20,000 check made out to "Cash" drawn January 2, 1981. Petitioner did not examine the couple's bank statements and was unaware of these checks. Petitioner also did not know the amount of his mortgage on his house between 1978 and 1982, the amount of his monthly mortgage payment, the amount of his property tax bill from the City of Stamford, or the amount of his average monthly telephone bill. Petitioner's wife took care of such matters because "she was the bookkeeper." On November 28, 1975, petitioners established a joint savings account. John Bell made deposits and withdrawals with respect to this account as well as petitioners' joint *502 checking account. Petitioner endorsed withdrawal slips from the savings account reflecting the following dates and amounts: Date
Amount
9-29-78
$ 4,300
1-12-79
9,500
2-9-79
11,000
1-4-80
30,000
Petitioner endorsed a Savings Mail Withdrawal Order for the savings account dated April 23, 1982, for $ 20,000 as well as a bank check in the amount of $ 20,000 payable to Rose Bell or John Bell. John Bell withdrew these amounts in accordance with his wife's instructions. Whenever he made a withdrawal, John Bell would give the money withdrawn to his wife. Petitioner never received any money from any withdrawals he made in accordance with his wife's instructions, and he did not know what his wife did with the money she instructed him to withdraw. Petitioner went with his wife to H & R Block each year and was present when the couple's tax preparer was given information about petitioners' income. He signed petitioners' joint income tax returns without looking at them. Petitioner reported all of his income to the Internal Revenue Service. In 1980, petitioners purchased a house in Oklahoma for approximately $ 53,000, paying $ 19,000 as a down payment. Petitioners *503 retained their home in Stamford, Connecticut. John Bell learned that his wife was accused of stealing money from Hilti when he read in the newspaper that she had been arrested for embezzlement. On April 9, 1984, Rose Bell pled guilty to criminal tax fraud in violation of section 7201 for the taxable year 1980. On June 14, 1984, the United States District Court for Connecticut entered its judgment pursuant to Rose Bell's guilty plea and sentenced her to two years in prison. In a notice of deficiency mailed April 11, 1985, respondent determined that petitioners did not report the following amounts of Rose Bell's embezzlement income: Embezzlement Income
Year
(Hilti, Inc.)
1978
$ 133,594.03
1979
154,585.28
1980
221,344.82
1981
95,147.01
1982
72,487.83
Paragraph 4 of the Stipulation of Facts filed by the parties contains the following language with respect to petitioners' deficiencies: Petitioner Rose Bell agrees not to contest that she is liable for the deficiencies in income taxes for the taxable years 1978 through 1982 as follows: Year
Deficiency
1978
$ 68,240.34
1979
81,769.99
1980
126,343.67
1981
51,581.08
1982
29,194.04
*504 Petitioner Rose Bell understands that a finding of such deficiencies can and will enter against her as a result of her agreement no to contest such liability. Paragraph 5 of the Stipulation of Facts filed by the parties contains the following language with respect to the additions to tax: Petitioner Rose Bell agrees not to contest that she is liable for the following additions to tax for the taxable years 1978 through 1982: Additions to Tax
Year
Sec. 6653(b)(1)
Sec. 6653(b)(2)
Sec. 6661
1978
$ 34,120.17
-
-
1979
40,885.00
-
-
1980
63,171.84
-
-
1981
25,790.54
-
-
1982
14,597.40
*
$ 2,919.48
Petitioner Rose Bell understands that a finding of such liabilities can and will enter against her as a result of her agreement not to contest such liability.
The parties have stipulated that amounts embezzled by Rose Bell were not reflected on petitioners' joint income tax returns for the years in issue and give rise to the deficiencies and additions to tax set forth in paragraphs 4 and 5 of the Stipulation. OPINION Petitioner maintains that the statute of limitations *505 bars assessment and collection of his 1978, 1979, and 1980 income tax deficiencies. Petitioner also argues that he qualifies for relief as an "innocent spouse" pursuant to section 6013(e). Respondent maintains that the period for assessment is open under sections 6501(c)(1) and 6501(e)(1)(A). Respondent also argues that petitioner is not an innocent spouse. Statute of Limitations
Section 6501(a) generally provides that any tax must be assessed within 3 years of the date on which the return in issue was filed. The parties agree that petitioners' joint returns for 1978, 1979, and 1980 were filed more than 3 years before respondent mailed the notice of deficiency. As to those years, the notice of deficiency was untimely if not within an exception to the general 3-year period of limitations.
Section 6501(c)(1)
Section 6501(c)(1) establishes one such exception. That section provides that "[i]n the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed * * * at any time." Respondent must prove fraud in each year for which he seeks to avoid the statute of limitations. , *506 affd. ; Rule 142(b).[2] Where fraud is proven against a taxpayer who files a joint return with his or her spouse, the bar of the statute of limitations is lifted and both spouses may be held liable for any deficiency. , affd. ; . Rose Bell's conviction for tax evasion in 1980 estops her from denying her fraudulent intent in that year, , affg. , but it does not so estop her husband, John Bell. ; ; . Petitioner John Bell has consistently and explicitly refused to concede that his wife intended to evade tax in any of the years in issue. Accordingly, if John Bell is to be held liable for the tax deficiencies attributable to his wife's embezzlement, respondent must *507 prove that Rose Bell fraudulently failed to report income on joint returns filed for 1978, 1979, and 1980. Mere proof of failure to report all income is not sufficient to satisfy respondent's burden of proving fraud. To avoid the statute of limitations, respondent must prove by clear and convincing evidence that Rose Bell intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of tax. Rule 142(b); section 6501(c)(1); see ; , affg. a Memorandum Opinion of this Court, . The existence of such fraud is a question of fact to be resolved upon consideration of the entire record. ; , affd. without published opinion . *508 Although fraud will never be presumed, ; , fraud may be proven by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. , affg. a Memorandum Opinion of this Court; . The taxpayer's entire course of conduct may establish the requisite fraudulent intent. ;; . Rose Bell's conviction for tax evasion in 1980 is clear and convincing evidence of her fraudulent intent in that year. Although petitioner was not collaterally estopped from denying his wife's fraud, , he made no effort to explain Rose Bell's plea of guilty and subsequent conviction. The judgment of the district court, taken together with Rose Bell's failure to report funds embezzled from Hilti, supports respondent's determination of fraud *509 for 1980. Accordingly, the statute of limitations does not bar the assessment and collection of the 1980 income tax deficiencies from petitioner John Bell. Respondent has not, however, submitted evidence of Rose Bell's fraudulent intent in 1978 and 1979. Although respondent has proven that Rose Bell embezzled money from her employer, that evidence alone does not establish Rose Bell's intent to evade tax. Respondent must prove by [Text Deleted by Court Emendation] affirmative evidence that she intended to evade tax known to be owing. Rose Bell agreed "not to contest" her liability for the deficiencies in issue; similarly, she agreed "not to contest" her liability for the additions to tax for fraud. Petitioner's wife thus carefully avoided admitting that she fraudulently intended to evade tax. Rose Bell's stipulation is analogous to a plea of "nolo contendere," and it cannot be an element of proof in respondent's case against her husband. See , affd. . The cases cited by respondent, , and , *510 are clearly distinguishable. In each case, we entered a default decision pursuant to Rule 123(a) against taxpayers who indicated that they would not contest the Commissioner's allegations of fraud. In neither case did another party continue to contest the issue. In this case, petitioner has refused to admit that his wife fraudulently intended to evade tax, and respondent has not presented any evidence that would satisfy his burden of proving fraud in the case against petitioner. Accordingly, respondent may not rely on section 6501(c) to avoid the 3-year statute of limitations for 1978 and 1979.
Section 6501(e)(1)(A)
Section 6501(e)(1)(A) establishes another exception to the general 3-year period of limitations set forth in section 6501(a). That section provides for a 6-year period of limitations where a taxpayer omits from a return in excess of 25 percent of his or her gross income. Respondent must prove the requisite omission. ; , affd. . Respondent may not rely on the so-called "presumption of correctness" *511 that normally attaches to the notice of deficiency; he must carry his burden of proof by introducing affirmative evidence of the omitted income. The record is devoid of such affirmative evidence. Petitioner admits that Rose Bell embezzled an unspecified amount of funds from Hilti, and he admits that the embezzled amounts were not reported on petitioners' income tax returns. He also agrees that the unreported amounts "give rise to the tax liabilities" set forth in paragraphs 4 and 5 of the stipulation. Petitioner does not, however, admit that the liabilities set forth in the stipulation are correct, nor does he stipulate to the amount of gross income omitted from petitioners' returns. Petitioner simply concedes that an unspecified amount of embezzlement income somehow "gives rise to" tax liabilities that his wife agrees "not to contest." Without the so-called "presumption of correctness" that ordinarily attaches to the notice of deficiency, the amounts set forth in the stipulation are nothing more than respondent's assertion of petitioner's liability. Respondent maintains that we may extrapolate the omitted amount of petitioners' *512 income from the stipulated facts. We decline to do so. Such extrapolation involves "grossing up," speculation and approximation that cannot be substituted for evidence. Moreover, as set forth above, the stipulation is too ambiguous to constitute an admission that the taxes determined by respondent are correct. Because respondent has failed to meet his burden of proof, his assessment of John Bell's 1978 and 1979 income tax liability is barred by section 6501(a). [3]
Innocent Spouse
Section 6013(e)(1), as amended by the Deficit Reduction Act of 1984, Pub. L. 98-369, Sec. 424(a), 98 Stat. 494, 801-802 and made applicable to all pending cases, provides as follows: (e) Spouse Relieved of Liability in Certain Cases. -- (1) In general. -- Under regulations prescribed by the Secretary, if -- (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of *513 tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement.
Petitioner has the burden of proving that all requirements for relief pursuant to section 6013(e) are satisfied. Rule 142(a); . Although the parties agree that the first two statutory prerequisites for relief have been satisfied, respondent contends that petitioner has failed to meet the requirements of section 6013(e)(1)(C) and (D). Section 6013(e)(1)(C) provides that the taxpayer seeking relief as an innocent spouse must prove that he did not know or have reason to know *514 of the understatement of tax when he signed the return. To carry this burden, petitioner must prove (1) that he did not have actual knowledge of the understatement of tax, and (2) that the omission was not of such a character as to cause a reasonably prudent person possessed of petitioner's experience and temperament to have knowledge of the omission. ; ; . We have observed that section 6013(e) is designed to protect the innocent, not the intentionally ignorant. . Petitioner had ample cause to be aware of substantial understatements of tax liability on his joint returns. Petitioner accompanied his wife to the local offices of H & R Block, was present while the returns were prepared, and signed the returns. Attached to the returns were his wife's Forms W-2, which reflected Rose Bell's salary income from Hilti. Petitioner consequently should have been aware of the amount of income that Rose Bell claimed to *515 have received. Petitioner should also have been aware of his wife's substantial withdrawals from the couple's savings account; petitioner, at Rose Bell's request, personally endorsed several withdrawal slips, a Savings Mail Withdrawal Order, and a check reflecting total withdrawals of $ 94,800. Petitioner nevertheless failed to contrast the couple's allegedly modest income with their ready access to large amounts of cash. This case is consequently distinguishable from , and , the cases relied upon by petitioner. In neither case did the taxpayer seeking relief pursuant to section 6013(e) endorse withdrawals of unexplained funds, and in neither case did the taxpayer have reason to suspect the accuracy of the returns prepared by his spouse. In Walker, the funds embezzled by the wife were rarely handled by the taxpayer-husband, and in Moskovitz the wife embezzled funds directly from her employer's personal checking account. Petitioner, in contrast, personally withdrew large sums of cash from the couple's joint account at his wife's request. We have *516 heard petitioner's testimony, and we have observed his demeanor at trial. Petitioner may be of advanced age and limited formal education, but we believe that he is neither naive nor unintelligent. His assertions that he did not know of the unreported income are uncorroborated, improbable, and unbelievable. We conclude that petitioner did not want to uncover the source of funds in the couple's joint account, and we conclude that he did not want to know what his wife did with the money he withdrew at her request. Because petitioner deliberately ignored his wife's financial machinations, he is not entitled to the relief he seeks. Because we conclude that petitioner had reason to know of the understatements of tax liability on his joint returns, we need not determine whether it would be inequitable to hold him liable for the deficiencies attributable to the omissions of embezzled income. To reflect the foregoing Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
*. 50 percent of the interest due on $ 29,194.40. ↩
*. 50 percent of the interest on $ 29,194.00. ↩
2. Unless otherwise indicated, any reference to "Rules" shall be deemed to refer to the Tax Court Rules of Practice and Procedure. ↩
3. We do not applaud the tactics of petitioner's counsel, who represented both the husband and wife in this case. It is respondent's obligation, however, to produce evidence to support his case and not our right or obligation to bridge such gaps. ↩